Stella Dranow v. Commissioner.
Dranow v. Commissioner
Docket No. 3784-65.
United States Tax Court
T.C. Memo 1968-277; 1968 Tax Ct. Memo LEXIS 23; 27 T.C.M. (CCH) 1485; T.C.M. (RIA) 68277; December 2, 1968. Filed *23 Hugh John Snow, for the petitioner. Norman H. McNeil, for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined deficiencies in income tax and additions to tax against petitioner and her husband jointly, as follows: *10
Additions to Tax
Year
Deficiency
Sec. 294(d)(1)(A)I.R.C. 1939
Sec. 293(b)I.R.C. 1939
Sec. 6653(b)I.R.C. 1954
1953
$3,985.94
$408.60
$1,992.97
1954
3,940.39
369.67
$1,970.20
1955
4,644.19
2,322.10
1956
2,559.10
1,279.55
1957
8,260.09
4,924.98 Originally, a joint petition was filed on behalf of both spouses; the husband agreed to a settlement of his liabilities in the amounts determined by the Commissioner, and the case of the wife, petitioner herein, was severed. The parties herein have entered into a stipulation in which petitioner in effect conceded all issues other than (1) whether her signature on each of the joint returns for the foregoing years was genuine, and (2) whether, if genuine, such signature was affixed under duress or other circumstances which would cause the returns not to be her returns as a matter of law. The Commissioner *24 has since conceded that petitioner's signature was not genuine on the 1953-1956 returns; accordingly, the foregoing issues remain only as to the return 1486 for 1957. The parties have filed a stipulation of facts which is incorporated herein by this reference. Petitioner Stella Dranow is an individual who, at the time of the filing of the original petition (Docket No. 5272-63) and the amended petition in her own name herein, was a resident of Beverly Hills, California. Federal income tax returns purporting to be the joint returns of petitioner and Benjamin Dranow were filed with the district director of internal revenue for the Upper Manhattan, New York district for the calendar years 1953 and 1954, with the district director of internal revenue for either the Upper or Lower Manhattan, New York district for 1955, and with the district director of internal revenue for the Minnesota district, at St. Paul, for 1956 and 1957. Petitioner and Benjamin Dranow were married in 1930; they have never been divorced. The marriage was "very bad" from the beginning. A son, Howard, was born to petitioner and her husband in 1942. In 1946, after years of disharmony and infrequent periods of *25 living together, Stella and Benjamin permanently separated. Since 1950, Stella has resided in or about Los Angeles, California. Benjamin has never resided with petitioner in California since 1950, and during the period in question he has resided in various places, including New York, Minnesota and Florida. Petitioner has not been regularly employed in any gainful occupation or profession since 1950. Benjamin's business or professional activities are not clearly set forth in the record. There is evidence that he did considerable traveling, and the references to his "legitimate" business activities suggest that he may also have been engaged in other activities that could not similarly be characterized. His ostensible principal occupation during the years 1953 to 1958 was general manager of John W. Thomas Co., Minneapolis, Minnesota, a department store. Stella knew nothing of the details of his business affairs. Although the spouses were separated, Benjamin provided petitioner and their son with an allowance for their support. He visited them occasionally. Fearing a possible divorce and the cessation of such support, petitioner has saved a portion of these allowances, depositing the *26 greater part of such savings in bank accounts in her own name. As disclosed by her individual returns for 1959 and 1960, the interest which she received on such accounts amounted to $1,347.10 and $1,698.68 for those years, respectively. These bank accounts represent the bulk of her assets and resources. She resides in a single furnished room. She did not file any separate income tax returns prior to 1959 because she was unaware of her responsibilities in this respect. In 1955 or 1956 petitioner underwent a serious operation for cancer. The operation left her emotionally exhausted and physically weakened to the point that she was bedridden to a considerable extent for a period of some years thereafter. Meanwhile, Benjamin was indicted and found guilty of various Federal crimes, including tax evasion, mail fraud and bankruptcy fraud. He received consecutive sentences aggregating 14 1/2 years. As to crimes other than tax evasion, see (C.A. 8, 1962). He is presently in a Federal penitentiary, but the record does not disclose when he started serving his first sentence. As indicated above, the Commissioner originally determined deficiencies *27 against petitioner and Benjamin jointly for the years 1953-1957, the case of petitioner was severed, and Benjamin agreed to entry of decision against himself in the amounts determined. However, the assessments made pursuant to that decision have not been satisfied. Petitioner's principal contention is that she never signed any of the joint returns for these years. The parties have agreed that she is entitled to prevail if her purported signatures are not genuine. Petitioner testified that she never signed any of the returns in issue. The Commissioner sought the assistance of an examiner of questioned documents employed in the Treasury Department. His written opinion was received in evidence pursuant to the stipulation of the parties. After comparing petitioner's purported signatures on the returns with certain of her unquestioned writings, he concluded that he was unable to find "a basis for the identification of Stella Dranow as the author of the signatures in her name on any of" the returns for 1953-1956, but he gave his opinion that she was the author of the signature in her name on the 1957 return. The parties have stipulated that the examiner was qualified to render the opinion *28 stated and would give like testimony if called as a witness. The Government has since conceded the case as to the years 1953-1956, and there remains in issue only 1487 the Commissioner's determination as to 1957. Petitioner was the sole witness before us. Although she was at times vague and confused, we were fully satisfied that she was honest and candid. She admitted that the signature on the 1957 return "looks like mine", but she testified that she "never" signed any joint income tax returns of any kind with her husband. We believe her. Although we would ordinarily be slow to reach a result different from that indicated by an expert on the genuineness of signatures, the circumstances here are unusual. Not only does petitioner unequivocally deny having signed any return with her husband, but we have before us a pattern of forged signatures over a period of years. Petitioner impressed us as being a truthful witness, and, in the context of this case, her purported signature on the 1957 return would simply appear to be a better forgery than the ones on the other returns. We do not find it necessary to review the evidence in detail. A decision against petitioner would be harsh *29 and unjust. While the matter may not be completely free from doubt, and while there may be more to this case than meets the eye, it is our best judgment on the entire record, and we hereby find as a fact, that petitioner's signature on the 1957 return was not genuine. Decision will be entered for the petitioner.